HUGHES *v.* HARRIS.

5-1172                                                          299 S. W. 2d 85

Opinion delivered February 25, 1957.

*B. W. Thomas,* for appellant.

*Roy Mitchell,* for appellee.

J. SEABORN HOLT, Associate Justice. September 27, 1955, appellant, Mae Hughes, sued appellee, A. L. Harris, for $1,650 alleged to be due her for the use, and as rental, of a building which she owned. Appellant answered with a general denial. By agreement trial was had before the court sitting as a jury and resulted in a verdict and judgment for appellee. This appeal followed.

For reversal appellant contends that the court erred in permitting evidence that tended to question appellant's title to the building and also that the judgment was contrary to the law and the evidence. The record reflects that on December 30, 1952, appellant, and her then husband (W. H. Hughes) entered into a written contract with appellee, Harris, which was denominated "Contract and Working Agreement," and which contained the following provisions:

"This agreement made and entered into on this 30th day of December, 1952, by and between W. H. Hughes and Mae Hughes, his wife, hereinafter called parties of the first part, and Albert Harris, Sr., hereinafter called party of the second part, WITNESSETH: For and in consideration of the sum of $1.00 paid to each other and the covenants and conditions herein contained, both parties agree as follows: That first parties will furnish to second party, the building located at 310 Whittington, Hot Springs, Garland County, Arkansas, for the purpose of operating a cleaning plant. Second party agreed to place machinery now owned by second party, necessary to equip said location for the operation of a cleaning and pressing plant and to place said plant in operation as soon as he can reasonably do so. Each party is to receive one-half (1/2) the net income from said business, after the payment of all operating expenses . . . Second party reserves the right to sell the equip-

ment and business at any time. HOWEVER, in case of sale by second party, the purchaser shall enter into a Lease Agreement to lease said building from first parties for a period of one year at the monthly rental of $50.00 and said rent is to be paid the first day of each month during the leasehold agreement . . . It is agreed between the parties hereto that said agreement shall not constitute a partnership and shall be considered a 'working agreement' in the nature of a rental agreement . . . It is mutually agreed between the parties hereto that second party shall exercise complete managerial authority over said place and business and that first parties are not to interfere and have any voice in said management.''

The evidence was to the effect that the cleaning and pressing equipment was moved into appellant's building between October 1, 1952 and December 30, 1952, but was never in fact set up and operated. Appellee so testified. Appellee further testified that he moved out that part of the equipment on which the Home Finance Company had a mortgage, stored it elsewhere, and then gave W. H. Hughes, husband of appellant, a Bill of Sale for the rest of the equipment in order that Hughes might dispose of it in his auction business, and get Harris his money out of it, that Mae Hughes called appellee (Harris) about moving the equipment and that he told her he had given her husband a Bill of Sale for it and had also given her husband a cash register for which he (appellee) had paid $75. Appellee never claimed any interest in appellant's real property adverse to appellant.

As we interpret the above contract between Mae Hughes and appellee Harris, it was, in effect, an agreement under the terms of which Mrs. Hughes was to furnish the building and Harris would furnish the equipment, manage and operate the business, and all profits, after expenses, were to be divided equally between them. There were never any profits. There was no provision that Mrs. Hughes should have $50 per month rental for her building while the cleaning and pressing business

was being operated by Harris. The only reference to a $50 per month rental appears in the above provision of the contract which provides that Harris reserves the right "to sell the equipment and business at any time. HOWEVER, in case of sale by second party, the purchaser shall enter into a Lease Agreement to lease said building from first parties for a period of one year at the monthly rental of $50 . . ." Since, as we pointed out, the business was never in fact operated there were no profits, and Harris gave a bill of sale for the equipment to Mrs. Hughes' husband, W. H. Hughes, one of the parties to the contract, clearly, Mrs. Hughes was not entitled to claim any rental in the circumstances.

Under our well established rule, we must affirm this judgment if we find any competent, substantial evidence to support it. The weight of the evidence and credibility of the witnesses were for the sole determination of the court, which, as we have often said, has all the finality as the verdict of a jury. *Holman* v. *Armstrong,* 187 Ark. 958, 63 S. W. 2d 339. Appellee's testimony was substantial and sufficient to warrant the findings and judgment of the trial court.

Affirmed.